[Docket Nos. 14, 16, 22, 24, 28, 34]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DAVID M. GRECO, appearing *pro se*, <br><br> Plaintiff, <br><br> v. <br><br> DETECTIVE LAUREN LAIELLI, NEW JERSEY OFFICE OF HOMELAND SECURITY AND PREPAREDNESS, and SERGEANT FRANK PACE, <br><br> Defendants. | Civil No. 22-4058 (RMB/EAP) <br><br> **OPINION** |

**APPEARANCES**

John P. Mueller
William P. Flahive
Flahive Mueller, LLC
24 Arnett Avenue, Suite 107
Lambertville, NJ 08530

    *On behalf of Defendant Detective Lauren Laielli*

Christine A. Barris
Office of the Attorney General
25 Market Street
P.O. BOX 116
Trenton, NJ 08625

    *On behalf of Defendant New Jersey Department of Homeland Security and Preparedness*

Daniel Joseph DeFiglio
Vincent P. Sarubbi
Archer & Greiner, PC
One Centennial Square

Haddonfield, NJ 08033

    *On behalf of Defendant Sergeant Frank Pace*

**BUMB, Chief District Judge**

    This matter comes before the Court upon three separate motions to dismiss filed by each of the named defendants in this action: Detective Lauren Laielli of the New Jersey Office of Homeland Security and Preparedness ("Laielli") [Docket No. 22], that Office ("OHSP") [Docket No. 16], and Sergeant Frank Pace of the Gloucester County Police Department ("Pace") (together, "Defendants") [Docket Nos. 14]. As set forth in *pro se* Plaintiff David M. Greco's ("Plaintiff's" or "Greco's") complaint, he alleges that Defendants defamed and subjected him to an unlawful search and seizure pursuant to an emergent warrant obtained by Defendants by presenting allegedly falsified documents to a state court judge. [Docket No. 1 ("Complaint").]

    However, neither of the two federal statutes Plaintiff relies upon in the Complaint provides for a private cause of action. Further, the Court finds that Plaintiff has failed his burden to establish the basis for this Court's subject matter jurisdiction, that Defendants are shielded against the claims alleged in the Complaint by the applicable doctrines of sovereign immunity and witness immunity, that Plaintiff's claims are time barred, and that Plaintiff has failed to comply with the New Jersey Tort Claims Act, which is also fatal to his defamation claims. Liberally construing the Complaint, the Court has also considered a potential claim under Section 1983. However, such a claim is not ripe because the state court proceedings against Greco remain ongoing by his own admission. For these reasons and as set forth below in greater detail, the pending motions to dismiss will be **GRANTED** and the Complaint will be **DISMISSED WITH PREJUDICE**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

    A.    The Current Lawsuit

Plaintiff initiated this suit by filing the Complaint on June 16, 2022, alleging that Defendants Laielli and Pace tampered with and presented falsified evidence during the pendency of state court proceedings. More specifically, Plaintiff alleges that, at a hearing before Superior Court Judge Edward McBride on September 6, 2019, regarding a petition under New Jersey's Extreme Risk Protective Order Act (the "ERPO Act"),[1] Defendants presented falsified evidence of his activity on a politically extreme social media platform. [Complaint at 5.] Plaintiff alleges that Defendants Laielli and Pace also lied to the press about his social media activity, his conduct with police, and certain investigatory findings of the FBI.[2] [*Id.* at 8.] As discussed below, Plaintiff previously challenged the constitutionality of the ERPO Act in federal district court based upon the same underlying state court proceeding that gave rise to the instant action. *See Greco v. Grewal*, 2020 WL 7334194, Civ. No. 19-19145 (Martinotti, J.). Plaintiff alleges that Defendants attempted to "sabotage" that earlier, federal suit by answering here with the same "defamatory falsehoods and falsified

---

[1] *See* N.J. Stat. Ann. §2C:58-23. The law allows for a petition by a family member, household member, or law enforcement officer against a respondent who poses a significant danger of bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm, and for a court order authorizing the seizure of the firearm. *See also Matter of D.L.B,* 258 A.3d 1129, 1130-31 (N.J. Sup. Ct. App. Div. 2021) (calling the ERPO Act a "red flag" law that allows the "emergent removal of weapons from any person who poses a danger to self or others").

[2] Throughout his pleadings Plaintiff references two exhibits from the state court proceedings – exhibits "S-7" and "S-9" – which are allegedly falsified social media posts of Plaintiff's depicting violent and antisemitic views. [*See* Complaint at 46; *see also* Docket Nos. 1-5, 30-1, 30-2.] Plaintiff contends that Defendants' false testimony included statements that the FBI had evidence of Plaintiff being in communication with the mass shooter who attacked the Tree of Life Synagogue in Pittsburgh on October 27, 2018. [Complaint at 4.]

documents." [Complaint at 7.] Plaintiff now seeks relief in the form of $350,000 for "damages to plaintiff's health, reputation, life, and future," as well as attorneys' fees. [*Id.* at 5.]

Plaintiff attached the transcript from the underlying state court proceedings to the Complaint as an exhibit. [Docket No. 1-2 ("ERPO Transcript").] Sergeant Pace testified before Judge McBride that Plaintiff had refused to open the door to police at the beginning of August 2019. [*Id.* at 19.] Plaintiff indicates in his Complaint that Pace was lying. [Complaint at 6.] Plaintiff suggests, by highlighting portions of the hearing transcript, that Sergeant Pace lied about his refusing to open the door for responding officers. [ERPO Transcript at 53.] Pace answered affirmatively on the witness stand when asked if such a warrant would alleviate safety concerns the officers had based on Plaintiff's refusal to open the door and the fact that they knew that he had firearms registered to him. [*Id.*] Detective Laielli testified that she had viewed publicly available social media posts of Plaintiff's online expressing antisemitic and violent views, and that when the officers initially went to his house, Plaintiff refused to come to the door. [*Id.* at 9–14.] Detective Laielli also testified that the police visit ended abruptly because Plaintiff was not answering the questions law enforcement asked of him. [*Id.* at 20.]

Plaintiff notes that at the ERPO hearing before Judge McBride, Defendants procured screenshots of posts on the social media platform Gab.com that they asserted were originated by Plaintiff. [*Id.* at 22.] One was a repost by Plaintiff of a convicted mass shooter's post. [*Id.* at 32.] Detective Laielli explained that, based on findings by the FBI, Plaintiff was in contact with such mass shooter before the shooting. [*Id.*] Plaintiff alleges these online posts are "falsified documents" and that the only real representations are his

4

picture and screenname, and that the recitation of the FBI finding was a "defamatory falsehood." [Complaint at 5.] Plaintiff asserts that these documents were included to "trick" Judge McBride into believing that Plaintiff had reposted and quoted the convicted mass shooter. [*Id.*] Plaintiff goes so far as to claim that Defendants "cut out pieces of paper" and used a photocopier to alter such evidence, which ultimately served as the basis for Judge McBride issuing the ERPO. [Docket No. 30-1 ("Plaintiff's Opposition Brief"), at 12.]

On November 7, 2019, statements by police to Joseph Atmonavage, a reporter for NJ Advance Media, were published in an article discussing Plaintiff's earlier suit. [Docket No. 1-1, at 3.] Plaintiff alleges that Defendants transmitted to the reporter these same kinds of "defamatory falsehoods" about his politically extreme social media activity, his comments to police during the August 2019 visit, his personal history of violence, and his online activity as it was investigated by the FBI. [Complaint at 8.]

    **B.**    **Plaintiff's Previous Federal Lawsuit Challenging the Constitutionality of the ERPO Act**

On September 6, 2019, Judge McBride issued the ERPO; shortly thereafter, Plaintiff's residence was searched, and his firearm seized. [Complaint at 6.] On October 21, 2019, Plaintiff initiated a federal lawsuit challenging the constitutionality of the ERPO Act, arguing that the law violates the First, Second, Fourth, and Fourteenth Amendments, and seeking a preliminary injunction to prevent application of the law. *See See Greco v. Grewal*, 2020 WL 7334194. On December 11, 2020, the entire action was dismissed without prejudice. *Id.* at *9.[3]

---

[3] Plaintiff's constitutional challenge was dismissed on the basis of *Younger* abstention grounds, pursuant to which a federal court has "discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend the principles of comity by interfering with an ongoing state proceeding." *Greco*, 2020

The Third Circuit affirmed Judge Martinotti's decision on November 12, 2021. *See Greco v. Bruck*,. 2021 WL 5276674 (3d Cir. 2021). Plaintiff filed a Motion for Clarification and/or Reconsideration, and on May 13, 2022, the Third Circuit granted the petition for rehearing by the same panel and simultaneously issued an "amended opinion" – identical to the opinion previously issued after the first hearing. 2022 WL 1515375 (3d Cir. 2022). The Circuit's decision was also based on *Younger* abstention grounds.[4] *Id.* However, the Circuit gave no explanation as to why a rehearing with the same panel was granted.

---

WL 7334194, at *3 (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005); *Younger v. Harris*, 401 U.S. 37 (1971)). *Younger* abstention is appropriate when "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Id.* (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Finding that Plaintiff could make his constitutional challenge at the final ERPO hearing in state court, as well as on appeal at the state court level, the District Court abstained pursuant to *Younger. Id.* at 7.

[4] On February 10, 2023, while Defendants' motions to dismiss were pending, Plaintiff filed a one-page letter Motion to Stay the State's Civil Case "because the State's case was created through multiple serious crimes.". [Docket No. 34.] The Court finds that even if the Complaint included a viable claim under Section 1983, which it does not, *Younger* abstention would nevertheless be appropriate in these circumstances. To be certain, the Third Circuit already considered a constitutional challenge arising out of the same state court proceedings challenged here and found that *Younger* abstention was appropriate because Plaintiff's prior suit was "a quasi-criminal civil enforcement action that meets the *Middlesex* factors." *Greco*, 2022 WL 1515375, at *3. More specifically, the Circuit found that nothing would prevent Plaintiff from raising his constitutional challenges in state court. *Id.* Here, Plaintiff's defamation claims do not give rise to any exception to the Anti Injunction Act. 28 U.S.C. § 2283 (stating that a District Court may not grant a stay of state court proceedings "except as expressly authorized by Act of Congress"). Further, and as discussed below, Plaintiff has failed to state a viable claim under Section 1983 because, by his own omission, the state court proceedings against him remain ongoing. *See McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019) (explaining that the "statute of limitations for a fabricated-evidence claim … does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor"). Accordingly, Plaintiff's motion [Docket No. 34] will be **DENIED**.

Then, on January 17, 2023, the United States Supreme Court denied Plaintiff's petition for certiorari. 2023 WL 192009 (2023).

I.  **LEGAL STANDARD**

   A.  **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for lack of subject matter jurisdiction. An attack on subject matter jurisdiction can be either facial – based solely on the allegations in the complaint – or factual – looking beyond the allegations to attack jurisdiction in fact. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack requires the Court to take all allegations in the complaint as true, while a factual attack lends no presumption of truth to the allegations and permits the Court to evaluate for itself the merits of the claim that jurisdiction exists. *Id.*

   B.  **Rule 12(b)(6)**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

7

555 (2007) (*first citing Conley v. Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)). A district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

Importantly, "[i]n considering a motion to dismiss a *pro se* complaint, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings

8

drafted by lawyers." *Dickerson v. New Jersey Inst. of Tech.*, 2019 WL 6032378, at *4 (D.N.J. Nov. 14, 2019) (citations omitted). This more liberal construction of *pro se* complaints does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See*, *e.g.*, *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers;' … but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'") (citations omitted); *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("[c]omplaints filed *pro se* are construed liberally, but even 'a *pro se* complaint must state a plausible claim for relief.'") (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## II.  ANALYSIS

### A.  The Complaint Fails to State a Plausible Claim of Defamation

The Court finds that Plaintiff's Complaint fails for both lack of subject matter jurisdiction and, alternatively, for failure to state a claim upon which relief can be granted.

In the Complaint, Plaintiff lists two federal statutes as the basis for his claims: 28 U.S.C. § 4101 and 8 U.S.C. § 1324c. However, neither statute is applicable here. Section 4101 defines "defamation" in the context of a when a domestic court can recognize or enforce a foreign court's judgment of defamation (*e.g.*, if the foreign jurisdiction protects the freedom of speech to the extent the First Amendment does). 28 U.S.C. § 4101. Section 1324c, on the other hand, outlines penalties for document fraud in the context of immigration proceedings. 8 U.S.C. § 1324c. Plaintiff has alleged no facts involving a defamation judgment, let alone a foreign one, or that any of the documents presented at the

9

ERPO hearing pertained whatsoever to immigration matters. Moreover, neither statute provides for a private cause of action. *See James Roa v. City of Denison*, No. 4:18-CV-168-ALM-CAN, 2019 WL 1306212, at *10 (E.D. Tex. Feb. 18, 2019) (explaining that Section "4101 does not contain a private cause of action"); *Ibrahim v. New Jersey Fam. Support Serv. Ctr.*, No. 5:21-CV-463 (MTT), 2022 WL 357191, at *2 (M.D. Ga. Jan. 7, 2022) (stating that Section "1324c does not provide a litigant with a private cause of action"). Since neither of the federal statutes Plaintiff cites is applicable, the Complaint is deficient in that it states that the basis for the Court's jurisdiction is federal question jurisdiction. [Complaint at 3.] Plaintiff also states in the Complaint that all parties are residents of New Jersey [*Id.* at 3-4], so there is also no basis for diversity of citizenship over any potential common law state tort defamation claim. Thus, Plaintiff has not met his burden to establish this Court's subject matter jurisdiction over his claims, which will be dismissed on this ground.

Even if this Court had subject matter jurisdiction, Defendants are generally immune from the present suit. Witnesses, such as Defendants pace and Laielli, are generally immune from defamation claims based on statements made as part of sworn witness testimony. *See Hohsfield v. Staffieri*, Civ. No. 21-19295 (FLW), 2021 WL 5086367, at *3 (D.N.J. Nov. 1, 2021) (dismissing allegations of presenting false testimony based on witness immunity); *see also Briscoe v. LaHue*, 460 U.S. 325, 330–46 (1983) (officer testifying in criminal trial enjoys absolute witness immunity for false testimony); *Kulwicki v. Dawson*, 969 F.2d 1454, 1467 (3d Cir. 1992) (witness testifying in judicial proceeding is absolutely immune for false testimony). Defendants NJOHSP and Laielli are also immune from suit based on the doctrine of Eleventh Amendment sovereign immunity. The Supreme Court has established that "an unconsenting State is immune from suits brought in federal courts by her own

citizens as well as by citizens of another state." *Employees v. Missouri Dep't of Public Health and Welfare*, 411 U.S. 279, 280 (1973). The administrative scope of sovereign immunity "extends to entities that are considered arms of the state." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). In assembling a definition for such "arms," the Supreme Court has found that "[a] state entity is properly characterized as an arm of the state … when a judgment against it would have essentially the same practical consequences as a judgment against the State itself." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). It has found also that a "suit against a state official in his or her official capacity is … a suit against the official's office" and "is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's defamation claims are also time barred. A claim of libel or slander must be filed within one year of the injury under N.J. Stat. Ann. § 2A:14-3. The witness testimony Plaintiff claims defamed him was made in September of 2019, and the article Plaintiff claims defamed him to the press was published in November 2019. Plaintiff filed his Complaint in June 2022, more than two years after each occurrence. There are also no circumstances that would warrant equitable tolling. During the relevant limitations period, Plaintiff initiated other federal lawsuits based on the same underlying conduct challenged here, including the lawsuit filed in October 2019 challenging the constitutionality of the ERPO Act. Thus, Plaintiff was clearly on notice as to his purported injury and claims.

Finally, Plaintiff's Complaint was not filed in accordance with the procedural requirements of New Jersey's Tort Claims Act, N.J. Stat. Ann. § 59:1–1. The statute requires that a plaintiff file a Notice of Claim within 90 days after the injury giving rise to the cause of action to pursue any tort claim against a public entity. N.J. Stat. Ann. 59:8-8;

11

*See also McNellis-Wallace v. Hoffman*, 236 A.3d 1014, 1019 (explaining in the language of the statute that plaintiff's failure to serve a tort claim notice "forever barred" plaintiff from recovery). Plaintiff's failure to timely serve a Notice of Claim also bars his defamation claims.

      B.      **The Complaint Fails to State a Plausible Claim under Section 1983**

For the avoidance of doubt, and in light of the Third Circuit's instruction to hold *pro se* litigants to less stringent pleading standards, the Court has also carefully considered a potential claim under Section 1983, codified at 42 U.S.C. § 1983, and whether that statute provides the Court with subject matter jurisdiction. Even construing all allegations in a light most favorable to Plaintiff, it does not.

In *Wilson v. Russo*, the Third Circuit expressly considered a Section 1983 claim in this context, which was brought by a litigant who claimed that his arrest and incarceration were without probable cause because the arresting officer "both lied and omitted material facts" during his application for an arrest warrant. 212 F.3d 781, 783 (3d Cir. 2000). As in *Wilson*, the statements made to the judge issuing the warrant would establish probable cause, if proven true. Moreover, the defendant in *Wilson* raised qualified immunity as a defense, so the Third Circuit engaged in the familiar two-step analysis for Section 1983 claims: first, the Court determines whether the plaintiff alleged deprivation of an actual constitutional right, and if so, the analysis proceeds to consideration of whether such right was clearly established at the time of the alleged deprivation. *Id.* (first citing *Conn v. Gabbert*, 526 U.S. 286 (1999); then citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995)).

In the context of an alleged falsified arrest, the Third Circuit in *Wilson* then articulated Plaintiff's burden of proof with respect to a Section 1983 claim:

> [T]he only way that Wilson can succeed is if he proffers evidence that Russo recklessly disregarded the truth in his warrant application, and that a warrant application based on what Russo should have told the judge would have lacked probable cause… a plaintiff may succeed in a [Section] 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause."

*Id.* at 786–87 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997)).

However, Defendants are correct that any claim under Section 1983 is not ripe. [Docket No. 36, at 2.] The United States Supreme Court made clear that the statute of limitations "for a fabricated-evidence claim" brough under Section 1983 "does not begin to run until the criminal proceedings against the defendant (*i.e.*, the [Section] 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019). This result "is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id.* at 2157.

By Plaintiff's own admissions, the underlying state court proceedings against him remain ongoing. [Docket No. 34.] Following the rationale of *Smith*, Plaintiff has no claim under Section 1983 against Defendants unless and until such proceedings in state court against him have terminated in his favor.[5] Only then may Plaintiff bring a Section 1983 claim against Defendants based on the conduct identified in the Complaint. Presently allowing Plaintiff to amend the Complaint to expressly allege a claim under Section 1983

---

[5] Absent this issue of ripeness, any potential Section 1983 claim would still not be viable against OHSP as the state agency is not a "person" amenable to suit for purposes of the statute. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 7071 (1989).

13

would be an exercise in futility. Accordingly, a claim under Section 1983 does not save Plaintiff's case.

### III. CONCLUSION

For these reasons, Defendants' motions will be **GRANTED**, and the Complaint will be **DISMISSED WITH PREJUDICE**. An accompanying Order as of today's date shall issue.

February 28, 2023                                        s/Renée Marie Bumb
Date                                                                 Renee Marie Bumb
                                                                              Chief District Judge